### TRAMMELL vs. HARRELL.

By the common law, in England and America, where two or more payees or obligees
have a joint interest in a note or bond, and one dies, *the right of action* survives
to the other.

And this is not charged by our statute, by which all survivorships of real and personal
estate are abolished.

A debt or demand, to be set off, must be due from the sole plaintiff, or all the
plaintiffs, to the sole defendant, or all the defendants. This is the law under our
statute, as well as elsewhere.

A defendant or defendants cannot set off a claim due to him or them by *only* one or a
part of several plaintiffs; nor can one defendant, of several, set off a claim due to him
alone, from the plaintiff or plaintiffs; and whether the claim sued on, or that at-
tempted to be set off, or both, are joint, or joint and several, makes no difference.*

THIS was an action of covenant, tried in the Crawford Circuit
Court, in September, 1841, before the Hon. R. C. S. BROWN, one
of the circuit judges. Dennis Trammell sued Isham Harrell upon a
bond, executed 7th April, 1839, for the payment, on the 1st of Octo-
ber, 1839, of $130, in corn, at cash prices. The defendant pleaded
set-off, " the sum of $150, upon, and by virtue of, a certain writing,
now in the hands of the said plaintiff," and full performance: to
both which pleas, says the record, the plaintiff joined issue, all, in
short, on the record. Trial before the court, without a jury. The
evidence adduced was as follows: One witness stated, that, in the
spring of 1840, he heard the plaintiff and defendant in conversation,
about two notes; one, the note sued on; the other, a note executed by
the plaintiff to the defendant and Isaac Harrell, deceased, dated some
time in 1838, for $144, agree, that one note should *butt* against the
other. He did not know who had possession of the latter note.

The plaintiff's attorney, sworn for defendant, stated that, soon after
the death of Isaac Harrell, who died two years or more before the
trial, his widow, who was his administratrix, placed the latter note in
his hands, with other notes, belonging to the estate. After the com-

---

* The CHIEF JUSTICE dissents, and differs *toto cœlo* from the majority of the court, in
the construction of our statutes, as to both points.

mencement of this suit, she gave witness an order to deliver up the note to the defendant.

Another witness stated, that he heard the plaintiff, in the fall of 1840, apply to the defendant for his note to the Harrells, when the defendant said that the note was not in his possession. About the same time, he heard the plaintiff apply to the administratrix for the same note; but she refused to give it up, saying that she wished to use it for a different purpose, in case another suit went against her.

Upon this evidence, the court found, for the defendant, $16-75, and gave judgment accordingly. The plaintiff moved for a new trial, which being refused, he excepted, and embodied the evidence.

*Turner* and *Pike*, for plaintiff in error, referred to the brief in *Hamilton vs. Myrick & Williamson, ante.*

*Mr. Justice* DICKINSON delivered the following opinion: There are two points raised, in this cause. The first is a question of set-off, and the second, whether, under our statute, the right of action survives. Both of these questions depend upon the proper construction to be put upon our statutes prescribing the rule in such cases. We will first dispose of the question of survivorship.

According to the principles of municipal justice, both in England and in this country, as the law now stands, where two or more payees or obligees have a joint interest in a bond or note, and one of them dies, the right of action survives to the other. This principle, it is believed, pervades the whole system of modern jurisprudence, and it is, certainly, one every way consonant to justice and equity, affording freedom to commerce, and increased facilities in the remedies on choses in action. To fetter or to confine it would certainly be to retrograde in the science of law, and to deprive ourselves of the benefit of the general improvement of the age. We deem these remarks strictly applicable, because they go to qualify and explain general terms in our statute, which seem to indicate a different doctrine. The 6th sec. of Ch. 58, of the Revised Code, p. 476, declares, that "all survivorships of real and personal estate are forever abolished." Now, the inquiry is as to the meaning of this sentence. Was it intended to

abolish the right of action surviving to a joint payee or obligee, and confine us to comparatively encumbered remedies? or, was it to prevent this very state of things that the whole sentence was inserted?

In order to ascertain the true meaning of the act, we will first inquire what was the old law, the mischief and remedy upon this subject. The territorial law declared, that the doctrine of survivorship, in cases of joint tenancy, should never be allowed. Now, it is apparent, that the Revised Statutes only re-affirm and re-assert that principle. All the States in the Union have similar provisions, and they are all upheld by alike high and patriotic considerations. The doctrine of entails and primogeniture, and the *jus accrescendi*, and the abolition of all patents of nobility, were the feudal badges which the American governments intended to sweep away, and thus break down all hereditary family succession, by unfettering property, and distributing it equally and justly among all the members of society. What is the meaning of " all survivorships of real and personal estate ?" It means that kind of an estate that springs out of a joint tenancy. To constitute a joint tenancy, there must be a unity of interest, of title, of time, and possession, and this usually relates to realty, although it is sometimes true in regard to personal estate. The destruction of any one of these unities will terminate the joint tenancy. -2 *Black. Com.* 185. *Co. Lit.* 193. Joint tenancies are now regarded with so little favor, both in courts of law and equity, that, whenever the expression will admit of it, the estate shall always be regarded as held in common. *Fisher vs. Wigg*, 1 *P. W.* 14, *n.* 1 *Ld. Raym.* 622. And Lord COWPER says, that a joint tenancy, in equity, is an odious thing. Things personal may be held in joint tenancy; as, if a personal chattel be given to two or more, absolutely, they are joint tenants thereof, and, unless the jointure be severed, the same doctrine of survivorship will take place as in lands and tenements. 2 *Black. Com.* 399. 1 *Vernon*, 488. Between partners in trade or farming, generally speaking, there can legally be no survivorship, as to personal property, in possession; for each of their respective shares goes to their personal representatives, and they become tenants in common with the survivor, the maxim being *inter mercatores jus accrescendi locum non habet*. *Co. Lit.* 3, 282, 182, *a*. A court of equity

Trammell *vs.* Harrell.

will bar survivorship, although the deceased wished the stock to survive. And if two persons take a farm, the lease will survive, but, if they lay out money in the way of trade, that shall not survive. Although there is no survivorship as to partnership property, in possession, yet, according to the principles of the common law, there is, as to choses in action; for, when one or more partners, having a joint and legal interest in a contract, die, an action against the parties must be brought in the name of the survivor; and the executor or administrator of the deceased cannot join; neither can he sue, separately, but must resort to a court of equity to obtain from the survivor the testator's estate. 1 *East.* 497. 2 *Salk.* 441.

These principles clearly show, that the kind of survivorship that the Legislature instituted to abolish, as to personal estate, related alone to a joint tenancy in such estate, and to the rents and profits issuing out of the realty. It was where the whole interest in an estate passed, and where the survivor took all that the act abolished, and not the mere right of action, which would always pass or survive to a coobligee. Now, as to choses in action, as notes, bonds, and the like, there never was any survivorship, if they were given in any way of trade. And this shows, that the survivorship in relation to personal estate, which the Legislature abolished, was never intended to include such a case. And the general words of the act must be taken in a qualified sense; for, unless that be done, they will defeat the very object and intention of the statute. Instead of remedying the evil, it would produce the very mischief intended to be cured. It would operate to the prejudice of trade and commerce, by encumbering the remedies by which rights would be asserted. Such a construction put upon the act, would be in direct derogation of all the principles of commerce, which are now so firmly and beneficially established among all civilized nations. And men, instead of being encouraged to join their means and efforts together, for important objects and ends, for trade and other purposes, would stand aloof from each other, if, upon the decease of one partner, the other had not the sole right to wind up the business. We think this principle, so completely and intimately blended as it is in our commercial relations, too plain to require further illustration or argument.

We apprehend there can be but little difficulty in putting a right construction upon our act of set-off, which declares, that " where two or more persons are mutually indebted to each other, by judgments, bonds, bills, notes, bargains, promises, accounts, or the like, and one of them commences an action against the other, one debt may be set off against the other, although they may be of different natures." This is the first section of the act. The fifth and sixth sections provide, "that, if the amount set off be equal to the plaintiff's demand, he shall recover nothing by his action; if less, he shall have judgment for the residue; and, if there be a balance due from the plaintiff to the defendant, judgment for that amount shall be rendered in his favor." The very language of the first section of the act clearly shows what kind of debts might be set off one against the other. They may be of different grades, but the persons themselves must be mutually indebted to each other, for so the act declares. What is the meaning of the term, " when two or more persons are mutually indebted to each other?" The mutual indebtedness of the parties is precisely the same as if they were respectively or jointly indebted; and the one expression is precisely tantamount to the other. And this principle is not varied because our act makes a joint contract a separate one. In that case, the parties cannot be said to be mutually indebted, but they are jointly or separately indebted, as they elect to treat the contract. Again, our act declares, if one of them commence an action against the other, one debt may be set off against the other: the latter clause of the sentence still affirming and re-asserting, that the parties to the suit can alone set off mutual debts or demands. The mutuality of the persons being thus clearly established, it expressly negatives the idea that a joint note may be set off against a separate, or *e converso*. This mutuality of indebtedness may have existed when the right accrued, or it may have arisen by the assignment of a demand, by another, or by operation of law. If a plaintiff's demand exceed the set-off, he is entitled to judgment for the residue. Now, will you give him a judgment upon a joint demand, when there can be no mutuality of indebtedness, and against a party who never owed him any thing, and who, of course, cannot be said to be indebted to him? If such had been the intention of the act, would it not have expressed

Trammell *vs.* Harrell.

it so? If the defendant's demand exceed that of the plaintiff, he is entitled to judgment for the residue. How shall he take judgment over? Shall his co-defendant, as well as himself, be entitled to a judgment upon a separate demand? Unquestionably not. All the States of the Union have statutes upon the subject of set-off, and most of them are very similar to our own. The language of some is, doubtless, more exact and certain than that of others, but we are not aware that, in any State, joint demands have ever been set off against several demands, or *e converso.* Most of these statutes, too, convert joint liabilities into several obligations. The New-York statute declares, that, if there be several defendants, the set-off must be due to them all, jointly. Here the statute is express; and, although the language is more accurate than the terms used in our act, still, we hold the words mutually indebted to each other, and where one commences suit against the other, that these debts are matters of set-off, are fully as clear and certain as the New-York act. *Babington on Set-off,* 37. *Ex parte Hanson,* 12 *Ves.* 446. 1 *Leigh, N. P.* 157. *Chit. on Con.* 329. *Parker vs. Nicholas,* 4 *Rand.* 359. The language of the Kentucky and Tennessee statutes is very similar to ours, and the courts, we think, have put a similar construction upon them.

And therefore, we are of opinion a joint demand is not allowed to be set off against a separate one, or a separate against a joint demand. In this case, however, the act of survivorship showed the whole right of action in the defendant below; and the demands, by operation of law, being mutual, and subsisting at the time of the institution of the suit, one claim was properly allowed to be set off against the other.

*Mr. Justice* LACY concurred.

RINGO, C. J., dissenting. In this case, two questions only have been discussed and decided by the court: First, whether, upon the death of a co-obligee, the whole legal interest in a chose in action survives to, and is by law vested in, the survivor. This question I understand to be decided by the court, in the affirmative; and, if I correctly understand the opinion of the court, it rests upon the conclusion, that the common-law rule on this subject, as respects personal property

Trammell *vs.* Harrell.

or choses in action, is not affected or abrogated by any of the statutory provisions in force here, which apply alone, as it is said, to real estate, and as to that, abolish or destroy the common-law rule. And this is said to be manifest, upon a consideration of the old law, the mischief designed to be remedied by the statute, and the remedy provided. Now, I have applied this rule of interpretation to the statutory provisions on the subject of survivorships, without being able to discover any principle or ground upon which they can be restricted, or held to include or abrogate the right, as regards real estate only. The common law, as I understand it, extended the rule to personal as well as real property, and went so far even as to charge the survivor, upon a joint contract, with the whole demand; so that, upon the death of a joint co-obligor, his executors, administrators, and heirs, were discharged from the obligation; and, upon the death of a joint owner of real or personal estate, or joint co-obligee, the whole legal estate or interest vested immediately in the survivor, who took it, discharged from all claim on the part of the legal representatives of the deceased joint owner, with this exception only, which is said to have been made for the encouragement of husbandry and trade, "that a stock, on a farm, though occupied jointly, and also a stock used in a joint undertaking, by way of partnership in trade, shall always be considered as common, and not as joint property, and there shall be no survivorship in them." And, although there was no survivorship as to partnership property, in possession, yet, at law, there was, as to choses in action; and, when one or more partners, having a joint legal interest in a contract, died, an action against the parties to it could be brought in the name of the survivor only, and the executor or administrator of the deceased could neither join in the suit nor bring a separate action on the contract, but was compelled to resort to a court of equity to obtain, from the survivor, the testator or intestate's share of the sum thereon recovered. 2 *Blackstone's Com.*, 182 *to* 185, 595. 2 *Saund. R.* 51, *n.* 4.

Now, it will be remembered, that the common law, not only in relation to joint tenants, but also in relation to joint obligors, was entirely abrogated, by statutes, passed in 1806, by the Legislature of the Territory of Missouri, before the late Territory of Arkansas was established,

Trammell vs. Harrell.

which was continued in force, in the latter territory, and also in the State of Arkansas, until they were superseded and repealed by the statute of this State, approved February 14, 1838; (see *Ark. Dig.* 131, 312, and *Rev. St. Ark.*, *Ch.* 82, *pp.* 475, 476); which latter statute, after providing " that all joint debts or obligations shall survive against the heirs, executors, and administrators of such joint debtor or obligor as may die before the discharge of any such joint debt or obligation;" and, that "joint obligations shall be construed to have the same effect as joint and several obligations, and may be sued on, and recoveries had thereon, in like manner; that " suits may be brought against the surviving obligor, and the heir, executor, or administrator of the deceased obligor, at the same time;" and, that "no creditor, on any joint or joint and several obligation, shall have more than one satisfaction and costs, in one suit:" further expressly declares, that " all survivorships in real and personal estate, are forever abolished." These provisions, as it seems to me, are so plain and unambiguous as to leave nothing to construction, and no doubt as to the intention of the Legislature. The language used certainly comprehends every case of survivorship, and, by necessary implication, as I conceive, repeals all laws establishing any such right, as well in respect to personal property and choses in action, as to real estate, without any reservation whatever. And I know of no rule or principle which warrants any restriction of, or exception to, its general operation; for, I think it has been sufficiently shown, that the injustice, the hardship, and the inconvenience of the old law, was not confined to real estate, but also extended to personal property and even choses in action; because, in respect to the latter, it could scarcely be considered just, that a surviving obligor, simply from the accidental circumstance of the death of his co-obligor, should be bound to answer the whole demand, and be deprived of all right to call upon the legal representative of his deceased co-obligor for a ratable contribution, or that the legal representative of a deceased co-obligee should be obliged to wait until the joint demand was collected by the survivor, and then be compelled to sue him, in a court of equity, and there recover of him the share or portion of the deceased co-obligee, before he could obtain the possession and enjoyment thereof. And it was, as I conceive, to

77

remedy these evils, and provide against every other hardship and inconvenience incident to the law of survivorship, that the act in question was passed; and therefore it ought not, and in my opinion cannot, consistently with any known and admitted rule of interpretation, be restricted in its operation, to any class of cases, but should be held to comprehend and repeal all laws pre-existing on the subject, and to take away or divest every right thereby conferred. Some inconvenience, I admit, might be expected from so radical a change in the law, but that consideration furnishes no authority to disregard, or by construction qualify a law where, as in the present instance, it is expressed in terms plain and unambiguous, and without any qualification or restriction whatever. In such case there is no room for construction, and the law must be understood literally; that is, according to its literal import, without any addition, qualification, or restriction, whatever; and the courts are bound so to adjudicate it, and leave the remedy for such inconvenience, when discovered, to the Legislature.

The second question decided by the court, according to my understanding of the opinion of the court, is, that no demand can be, legally, the subject of a set-off, under our statutory provisions in relation to that subject, except such as are due from all of the plaintiffs to all of the defendants in the suit in which the set-off is claimed. In this opinion, I cannot agree with the majority of the court. It is well understood, that no set-off was allowed by the common law; and, that the whole right of set-off, in actions at law, had its origin in certain statutes of England, the first of which gave it only in respect to a single class of demands; but it has been considerably enlarged and extended by subsequent acts of Parliament, so as to embrace, generally, all liquidated damages or demands upon which an action of debt or indebitatus assumpsit would lie, but only where the demand to be set off is due in the same right, from all of the plaintiffs to all of the defendants. And this I understand to be one of the most prominent and distinct features in all of the acts of Parliament upon the subject, and it is one which appears to have been introduced into the statutes of set-off of a majority of the States in the United States, and in such States there can be no doubt that a demand, not due from all of the plaintiffs to all of the defendants, cannot be admitted as a set-off,

because it is not within the provisions of law allowing such defence to be made. The statute of New-York, for instance, *Rev. St. N. Y.*, 2d *vol.*, 454, *sec.* 18, § 6, provides that, " if there be several defendants, the demand set off must be due to all of them, jointly." This provision is perfectly plain, and in that state there can be no doubt, that a demand, not due to all of the defendants, jointly, cannot be admitted as a set-off, because the law not only fails to give the right, in respect to other demands, which of itself would be sufficient to exclude them, but the statute, in terms the most explicit, expressly prescribes, that the demand to be set off must be due to all of the defendants, jointly. But no such provision is contained, in our statute, on the subject of set-off, and it is, as I conceive, only necessary to refer to the first and seventh sections of the statute, to show that there is a wide and marked difference, in this particular, between the provisions of our statute, and that above quoted from the statute of New-York. The first section of our statute of set-off, *Rev. St. Ark.* 726, *Ch.* 139, declares that, " if two or more persons are mutually indebted to each other, by judgments, bonds, bills, notes, bargains, promises, or the like, and one of them commence an action against the other, one debt may be set off against the other, although such debts may be of a different nature;" and the seventh section provides, that, " when any plaintiff shall be indebted to a defendant in any bond, bill, note, contract, book account, or other liquidated demand, and the defendant shall fail to set off such debt against the plaintiff's demand, such defendant shall be forever barred from recovering costs in any suit which he may thereafter institute upon any such bond, bill, note, contract, book account, or other liquidated demand." The language here quoted, it will be perceived, does not, in any way, make the right of set-off to depend upon the number of the defendants, as in the statute of New-York, but makes it depend solely upon the existence of a mutual indebtedness between one or more of the persons suing and one or more of the persons sued. To illustrate my view of the statute, suppose A., B., and C., indebted to E. in $1000, and E., at the same time, indebted to A. in the like sum of 1000. A. sues E. for the debt: can E. set off the debt due to him from A., B., and C.? Certainly. Why? Because there exists between him and the plaintiff a mutual indebted-

ness. Each owes the other a debt, and the law having made the debt of A., B. and C., several as well as joint, E. has an election to treat it as the individual debt of A.; and so regarding it, there is, certainly, in the most strict understanding of the term, a mutuality of indebtedness between the parties A. and E. But, suppose the suit brought by E. against A., B., and C., would not the same mutuality of indebtedness exist between A. and E.? I answer, that it would; and that, according to the letter, as well as the spirit of the statute, A. would have a legal right to set off the debt due to him from E., because, as before remarked, the debt of A., B. and C., is, by law, made several as well as joint, and the election of the plaintiff to treat it as joint, could not, surely, be allowed to have the effect of changing the character of the contract, or of destroying any legal right of either of the defendants to interpose such defence as he could have made, if sued separately. Now, if the mutuality of indebtedness, mentioned in the statute, referred to the parties to the suit, and the right of set-off depended upon the mutuality of indebtedness between the plaintiff and all of the defendants, the plaintiff, in almost every instance where there are several obligors, could, at will, exclude any set-off of a demand due from him to all, or any number of them, by suing a greater or less number of them; that is, by omitting to sue a part only of those to whom he is indebted, or by joining, in the suit, some to whom he is not indebted; and thus, the whole object of the statute might be, and I doubt not in many cases would be, defeated. The law is said to abhor a multiplicity of suits; and I understand it to be the principal, if not the sole object, of all laws of set-off, to prevent a multiplicity of actions, by enabling those who hold cross-demands against, or are mutually indebted to, each other, to litigate and finally settle them, in a single suit; besides, it is a remedial statute, and, when necessary to accomplish the object designed to be effected by it, should be liberally construed, so as to repress the evil and advance the remedy. This, I conceive, is most effectually done by admitting a set-off in all cases of mutual indebtedness between any of the parties to the suit, though this, according to my understanding of the provisions of the statute, would be nothing more than barely giving effect to it, according to its legitimate import.

Having thus expressed my opinion as to the points decided by the court, I will simply add, that, in my opinion, the judgment admitting the set-off, in this case, is erroneous, and ought to be reversed.

But the majority of the court being of a different opinion, the judgment was affirmed.