## SILLIVANT AND THORN *vs.* REARDON.

Where a defendant has been regularly served with process, in time to require him to plead, the plaintiff may take an alias writ against him, even after he amends his declaration.   The defendant is bound, at his peril, to take notice of the amendments.

In an action on contract, a discontinuance as to one defendant regularly served with process, is a discontinuance as to all.

But if the other parties subsequently demur or plead, they waive the objection, and remain in Court.

A plea can be stricken from the files under peculiar circumstances.  For instance, a dilatory plea, after appearance and special imparlance; or after a party has pleaded to the action, or done some other act, waived the right so to plead; a plea not sworn to, where affidavit is necessary; a plea not signed by counsel, &c.

But a plea which merely sets up a defective defence, or a defence defectively stated, should always be met by demurrer.

Although a joint and several, or joint demand, cannot be set off against a several one, and *e converso,* yet, where three are sued, and discontinuance as to one, the others may plead a set-off due to all the *original* defendants.

In an action on a penal bond, an offset may be pleaded against the *penalty.*

Sillivant and Thorn *vs.* Reardon.

In an action for damages, on the breaches of a bond with conditions; by which the plaintiff sold the defendants the timber on a tract of land, and they contracted to clear and grub it as fast as they removed the timber, and to have it cleared and fenced by a certain time, besides paying a certain sum for the timber, the defendants cannot excuse performance by proving an overflow upon the land; nor can the plaintiff enhance his damages by showing his consequent failure to make a crop, or the value of such crop.

The rule for ascertaining damages in such a case is, the cost of performing the work which the defendants should have performed.

All evidence in relation to the value of the timber, the cost of taking it off the land, or the price to be paid for clearing, other than is contained in the contract, is equally irrelevant.

In an action on a penal bond, the plaintiff, although affirmative pleas are filed, has the right of opening and concluding to the jury.

THIS was an action of debt, tried in the Pulaski Circuit Court, in May, 1842, before the Hon. JOHN J. CLENDENIN, one of the circuit judges. Reardon sued Sillivant, Ford, and Thorn, on a bond for $500, conditioned that, as Reardon had sold them all the wood and timber on a tract of land, (except sufficient to put it under good fence), with the right of cutting and removing the same, they agreed to clear and grub the land so as to prepare it for the plough, and to fence it in a certain manner, all by the 15th March, 1840, and to pay him $75 by Feb. 1, 1840, and that the clearing and grubbing should keep pace with the removal of the wood. The original declaration, filed Aug. 5, 1840, against Sillivant, Ford, and Thorn, was for the penalty, without breaches. On the 14th of August, 1840, the writ, returnable to the 1st Monday of September, was executed on all the parties. On the 16th of November, 1840, the plaintiff took leave to amend his declaration, and for an alias writ, and on the 8th of Jan., 1841, he filed an amended declaration, which is endorsed "filed, and writ issued, Jan. 8, 1841." The writ was, in fact, issued on the 23d of Jan., 1841. In this writ, Sillivant's name was written *Sullevant.* This writ was executed on *Thorn* and *Sullevant,* but not on Ford. On the 13th March, 1841, "the defendants," without entering their appearance, moved the Court to quash the writ, for this variance as to the name of Sillivant. Motion sustained. On the 23d March, the plaintiff again amended his declaration, took an order for an alias writ, and continued the case to September term. This second alias issued March 23d, 1841, and was served 8th May, 1841, on Thorn and Sillivant. Another alias issued on the 29th May, 1841,

returnable to September term, and was executed on *all* the defendants, May 31, 1841.

At September term, the defendants had oyer of the bond and condition, on the 13th of September. On the 14th, upon motion of Sillivant and Thorn, the writ last issued was stricken from the files, at plaintiff's costs. The suit was then, on motion of the plaintiff, discontinued as to Ford, " one of said defendants not served with process," and the other defendants demurred to the declaration. Demurrer sustained, for variance as to the name of Sillivant, declaration amended, and case continued.

The declaration, as amended, assigned two breaches: first, that the defendants had cut and carried away all the timber, but had not cleared, grubbed, and fenced the land, whereby the plaintiff lost a crop which he would otherwise have raised, and expended $200 in clearing, grubbing, and fencing; second, non-payment of the $75.

Sillivant and Thorn, in May, 1842, filed seven pleas: First, *general* performance of the whole condition. 2d, *Special* performance of the whole condition. 3d, Set-off of indebtedness of plaintiff to the three original defendants, to the *damages*. 4th, Set-off of indebtedness of the plaintiff to same, to the penalty. 5th, That they were prevented by overflow from complying with their contract by the time stipulated, but did so afterwards, and plaintiff accepted their work and labor in full satisfaction. 6th, That they did not perform in time, but did afterwards, and their work and labor was accepted by plaintiff in satisfaction. 7th, *Nil debet.*

On motion of the plaintiff, the 3d, 4th, and 7th pleas were stricken out; and the defendants excepted, setting out in their exceptions only the third plea. The case was tried by a jury on the 18th of May, and verdict for the plaintiff $105. A bill of exceptions was filed as of that day, by the defendants, setting out the instrument sued on, and the other evidence in the cause. The points excepted to were, the refusal of the Court to permit parol evidence as to the price for which defendants were to clear the land, &c.; to allow a witness to state that he did not know that plaintiff owned any land at all; to allow him to state that the land was as well cleared as it commonly is in this country for the first year's crop; to allow him to state what the

Sillivant and Thorn *vs.* Reardon.

work actually done was worth; the refusal of the Court to allow the defendants to open and conclude to the jury; and the refusal of the Court to instruct the jury that, if the overflow prevented Reardon from making a crop in 1840, he was entitled to no damages on the score of not making a crop, even if the defendants had not cleared and fenced the land according to contract.

On the 18th of May, the defendants excepted also to the refusal of the Court to allow an exception *nunc pro tunc* as to the allowance of discontinuance, on affidavit of defendant's attorney that he did not know of it until a few days before the trial.

The case came up by writ of error.

*W. & E. Cummins* for plaintiffs in error. The declaration is defective, and the verdict rendered upon it cannot be sustained. The claim for damages in the breach, in consequence of the loss of the crop and the use of the land, is fanciful; and such damages would be no legal result of the breach of the contract. Entire damages having been assessed, and a portion of the damages claimed being illegal, no valid judgment could be rendered therefor; *Staymode vs. Locock, Cro. Jac.* 115; *Stains vs. Wild, Cro. Jac.* 352; *Waters vs. Bridge, Cro. Jac.* 639 ; *James Osborne's case,* 10 *R.* 131, and authorities collected in argument, 3 *Wilson,* 185; *Blanchard vs. Fisk,* 2 *N. Hamp. Rep.* 398 ; *Hab.* 191 ; *Cro. Jac.* 353, 578, 640, 664 ; 3 *Lev.* 188 ; *Cro. Eliz.* 858, 861 ; 2 *Cro.* 217 ; 1 *Rall. Abr.* 256 ; *Moore,* 885 ; 1 *Rall. Abr.* 258, 245.

The Court below erred in striking out the 3d plea. The plea was in every respect formal and adapted to the nature of the action, 1 *Ch. Pl.* 551, *Burress vs. Tucker,* 5 *J. R.* 105. The indebtedness set up in plea, could well be pleaded by way of offset, 1 *Ch. Pl.* 334, to 338, and 106, '7, '8, 1 *Ch. Pl.* 551; *Rev. St. ch.* 139, *sec.* 1; *Tramell vs. Harrell,* 4 *Ark. Rep.* 602; *Simpson vs. Hart,* 14 *J. R.* 63; 4 *J. R.* 123; *Columbia Ins. Co. vs. Black,* 18 *J. R.* 149; *Caines vs. Brisham,* 13 *J. R.* 9; *Caines vs. Alsop et al.,* 13 *J. R.* 9; *Sherman vs. T. & H. Crosby,* 11 *J. R.* 70; *Mitchell vs. Gibbs,* 2 *Bay's Rep.* 475.

There was likewise error in striking the 4th plea from the files. The plaintiff could only recover the penalty of the bond and interest,

in the action ; and the defendants had a clear right to plead payment of those sums, and an off-set equal to them. *Bernsell vs. Taylor*, 1 *McCord*, 503 ; *Cherry vs. Mason, Cooke*, 269 ; *Carter vs. Carter*, 3 *Day's cases*, 30; *Clarke vs. Wilson, et al.*, 1 *Ver. Rep.* 266; *Collins vs. Collins*, 2 *Burr.* 825; *Burgess vs. Tucker*, 5 *J. R.* 105.

*Ashley & Watkins*, contra.

*By the Court*, PASCHAL, J. The proceedings in this case are greatly encumbered with useless matter ; and such as an industrious bar, anxious to try every cause upon its merits, should never indulge.

Reardon sued the plaintiffs in error, and Ford, in debt on a penal bond, a copy of which is three times set forth in the proceedings. The original writ was served on the 8th August, 1840, on all the defendants. No objection whatever exists as to the service on *Sillivant & Ford*. At the appearance term, Reardon obtained leave to amend his declaration, and on his motion an *alias* writ issued as to all the defendants.

We leave a full history of the case to the patience of the Reporter, and will here proceed to examine the objection raised in regard to the discontinuance as to Ford. For, from the misapprehension of the parties' rights, arising from this circumstance, has much of the difficulty sprung up. The alias writ dated 23d Jan., 1841, was returned *non est* as to Ford. But there was another writ dated 29th May, 1841, which was served on all the defendants. The defendants at the time protested against entering an appearance, and on their motion the "writ was quashed." The plaintiff below filed another amended declaration, and sued out another "*alias writ.*" This fourth writ, like the third amended declaration, was to the damage of the plaintiff one dollar; whereas the previous writs and declarations laid the damages at a thousand dollars. We but mention this circumstance to show the great irregularity of the proceedings. This *pluries* writ was executed on Thorn and Sillivant, and a non est returned as to Ford. Thus far the plaintiff had proceeded alone, except so far as the defendants, without entering an appearance, had obtained a quashal of one of the *alias writs*, for a supposed want of

Sillivant and Thorn *vs.* Reardon.

*idem sonans* in the names of Sillavant and Sillivant. There certainly was error enough by this time to have reversed the judgment on the score of costs as well as irregularity, if such error be not saved by offering to remit the costs in this Court. But at the September term, 1841, Thorn, Ford and Sillivant appeared and craved oyer of the writing, which was granted by filing the original on the 13th September, 1841. The next day the plaintiff moved to strike the writ issued 29th May, 1841, from the files; which motion was sustained and the writ stricken off. Whether the Court struck off the service of the sheriff on all the defendants does not appear. It would seem however that there was some mistake grew up about this time about the record. For we find in the same order that the suit *was discontinued as to Zadoc Ford "not served with process,"* and the defendants, Sillivant and Thorn, filed their demurrer to the declaration in the case, to which there was a joinder, and the demurrer sustained. On inspection of the demurrer we find, that the defendants, Thorn and Sillivant, again craved oyer, and had the bond read to them. They set out the copy in their demurrer; they set forth the special cause of variance, "that the instrument given on oyer is not signed 'Wm. Sillivant,' and therefore varies from the supposed writing obligatory described in the plaintiff's declaration." As before remarked, the writing is copied into the proceedings three times ; and is each time signed *Wm. Sillivant.* The declaration also avers that it was so signed. As, however, the plaintiff again amended his declaration, and the record does not show in what the amendment was made, of course we are unable to see what defect the amendment cured.

At a subsequent day of the term, Thorn and Sillivant filed their seven joint pleas to the action. The first is a general performance of the covenants. The second specified such performance as to meet the assignment of breaches. The third is a plea of Sillivant and Thorn in which they allege an off-set due by the plaintiff to Sillivant, Ford and Thorn, of five hundred dollars, for work and labor, and a like sum for goods, wares, materials, &c., money loaned, interest account and account stated; which said several sums they offered to set off against the plaintiff's demand of seventy-five dollars, agreed to be paid in said covenant. These pleas were filed the 10th May, 1842. We should

not have noticed the history of the pleadings in this place, but that we find a bill of exceptions, filed the 25th of same month, but made to take effect on the 18th, in which there is an oath of one of the counsel, setting forth that his original appearance was for all the defendants; and that he did not know until after the filing of the pleas, that any discontinuance had been entered as to Ford, that he was constantly in attendance, and that said discontinuance was made without his knowleyge or consent. Upon this affidavit, as well as the affidavit of Sillivant, the defendants offered to file a bill of exceptions to the discontinuance; and such leave having been refused, they excepted to the refusal.

This brings us back to the question of the effect of the discontinuance as to Ford, after being regularly served with the original summons. The plaintiff below never asked to set aside the return of the sheriff on the ground of insufficiency. The sheriff states that he executed the same ( when and where ) "by presenting to Tho's Thorn the within writ, who accepted service of the same, and by reading to William Sillivant and Zadoc Ford." Without deciding as to the sufficiency of the service, as to Thorn, the service certainly was regular as to Ford. The writ was executed on the 14th August, and was returnable to the first Monday of September, more than fifteen days before the Court. By the 53*d sec. chap.* 116, *Rev. St. p.* 627, the writ having been served more than fifteen days and less than thirty days, before the return day thereof, the defendants were bound to appear and enter their plea, &c., and the 8*th section of chap.* 159, *Rev. St. p,* 777, declares that, "Whenever any writ or other process issued out of any court of this State, shall not be executed, the clerk of such court, on the application of the party suing out the same, shall issue an *alias, pluries,* or other proper process, without an order of the Court for that purpose." If no service had in fact been made, which would have bound the defendants to appear, as if they had been served less than fifteen days, or the service had not been according to law, see *Pool vs. Loomis, ante,* then the plaintiff might have sued out an alias writ: or, if one of the defendants had not been served, an alias might have been sued out as to such defendant not served. But we know of no right which a plaintiff has to pass over a writ which

Sillivant and Thorn *vs.* Reardon.

is sufficient in law, and which has been regularly served a sufficient time to require a plea, and ask for an alias writ. The filing of an amended declaration gave no such right. The party might waive the demand of the plea, and he had a right to amend his declaration upon such terms as the Court, in the exercise of a sound discretion, should deem to be just. But as the defendants had already had legal notice of the action, they must take notice at their peril of all such amendments.

Having thus shown that Ford was regularly served with process, and was legally bound to answer the action or suffer default, the question again recurs as to the effect of entering a discontinuance as to him in an action founded on a writing obligatory. This question was examined by this Court with a great deal of care in the cases of *Frazier et al. vs. The Bank of the State*, 4 *Ark. Rep.* 510; *Beebe vs. Real Estate Bank, ib.* 552. This Court then held that a plaintiff cannot, after service of process upon all the defendants, be permitted under our statute to discontinue as to one, and take judgment by default as to the others ; and that a discontinuance as to one operated as a discontinuance of the whole action. Since the delivery of these opinions, the same point has been presented in other cases, and different counsel have very ably argued that the decisions of the Court were wrong. See *Hutchings et al. vs. Real Estate Bank*, 4 *Ark. Rep.* 517; *Hyde & Goodrich vs. Ashley, ante*.

We have been induced to review the authorities on this subject in order to see whether there is good reason for this Court to reverse their decisions in this respect. An able writer, Sergeant WILLIAMS, says, "that the true nature and extent of a nolle prosequi in civil cases, was not accurately defined and ascertained until modern times. The authorities upon this subject in the old books are contradictory and confused. In some of the cases, it is considered in the nature of a *retraxit*, operating as a release or discharge of the action for the same cause. *Coke Litt.* 139, *a. Cro. Jac.* 211; *Bucher vs. Shirley, Cro. Eliz.* 762. And therefore in trespass against two, who pleaded several pleas, it was held that if a plaintiff entered a nolle prosequi against one before he had obtained judgment against the other, it would destroy the action as to both. See 14 *Edw.* 4, 6, *pl.* 2, *S. C.*

*Bro. Trespass,* 331. *Hob.* 70. *Parker vs. Sir John Lawrence,* S. C. 2 *Roll. Abr.* 100, *pl.* 1. So where a plaintiff, after verdict upon bond, entered a nolle prosequi, and brought a new action, it was held an absolute bar to such action. *Bucher vs. Shirley,* Cro. Jac. 211." See 1 *Saund. Rep., Salmon vs. Smith, note* 2, *p.* 207. "But in other cases, which have been adhered to ever since, a nolle prosequi *is* considered not to be of the nature of a *retraxit* or release, but an agreement only not to proceed either against *some* of the defendants, or as *to part* of the suit. And in these cases, it is held that a nolle prosequi may be entered against one of the defendants before judgment obtained against the other." 1 *Saund. Rep.* 207, *note* 2. Many authorities are cited in support of this proposition. Most of them we have examined.

In *Boulter vs. Ford, Sid.* 76, which was a covenant against two, who covenanted to build a house in a workmanlike manner, one pleaded performance, and upon trial it was found for him; the other suffered judgment to go by default; and it was held by the Court that the verdict, having found the covenant performed, discharged them both, and that both defendants should have their costs. See also Blake's case to same effect, 1 *Sid.* 378. In *Noke & Chiswell vs. Ingham,* 1 *Wils.* 90, one of the defendants pleaded bankruptcy; LEE, C. J., says, "It is agreed on all hands that in trespass against several, the plaintiff may enter a nolle prosequi as to one, and that will not discharge the other, and therefore I cannot see why it may not be done in this case." And such was the opinion of the whole Court. But DENNISON, J., we have no doubt, gave the true ground of the decision, viz: "that the plea of the bankrupt is not *a plea to the action,* but only a *personal discharge;* but that if one defendant was to plead a plea that was to go to the action of the writ, he thought it might then have a different consideration; but that is not the case here; this case is exactly the same as where an action is joint and several, for the stat. of 10 *Anne, chap.* 15, has made the partner (not a bankrupt) liable for the whole debt." And this they thought the proper way of declaring when one of the defendants was a bankrupt, because they had never seen a declaration where it was suggested that one of the defendants was a bankrupt in the declaration.

Sillivant and Thorn *vs.* Reardon.

The case of *Dale vs. Eyre et al.*, 1 *Wilson*, 306, was an action of trover against a defendant, executor, and other defendants not executors: verdict against the defendants not executors, and the defendant executor found *not guilty*. It was objected in arrest of judgment, that this being a tort does not survive, and you cannot join the executor a defendant with others. But the court said, "you come too soon with that objection. Cannot the plaintiff enter a nolle prosequi?" This case, it will be seen, was a tort and turned upon a personal discharge; because an action of trover did not lie against an executor for a conversion by his testator. *Hambly vs. Trott, Cowp.* 371. And in these cases it would seem that the nolle prosequi, so entered against some of the defendants, must from the nature of the actions, be an absolute bar to any further action for the same cause. If an action is brought upon any contract against several defendants, who join in their pleas, and a verdict is found against them, it is apprehended the plaintiff cannot enter a nolle prosequi against any of them, because the contract being joint, the plaintiff is compellable to bring his action against the parties thereto; and he shall not, by entering a nolle prosequi, prevent the defendant against whom the recovery has been had, from calling on the other defendants for a ratable contribution. But if, in such actions, the defendants *sever in their pleas,* or where one pleads some plea which goes to his *personal discharge,* such as bankruptcy, *ne unques executor,* and the like, and not to the action of the writ, the plaintiff may enter a nolle prosequi as to him, and proceed against the others. See 1 *Saund.* 207, *note* 2. All the cases cited by Sergeant WILLIAMS in support of his views in relation to contracts, were actions of tort, and therefore go little way to prove his rule.

We think that, upon a careful review of the common law doctrine on the subject, it will be found that a nolle prosequi, in an action upon a contract, could only be entered in a case where a plea was interposed, which went to the personal discharge of the defendant; but wherever all the parties were joined as defendants, and one of them pleaded a plea which operated to defeat the action, there never was, at common law, reason, justice, or precedent, for discontinuing as to him, and proceeding against the other defendants. A plaintiff who

would attempt such a practice ought, upon every principle of justice, to be considered as having abandoned his action. The New-York cases were reviewed by this Court in the case of *Beebe vs. Real Estate Bank*, 4 *Ark. Rep.* 552. It was there shown that they did not further depart from the common law rule than was imperative from their local statutes, and that, in Arkansas, no such statutes existed. Upon a more careful review of the cases in New-York, this Court have the more reason to be satisfied with their previous decision. In the case of *Fuller vs. Van Schaick*, 18 *Wend.* 548, the Court, after showing that the decision was to turn expressly upon their local statutes, say: "This is not like an action against several persons bound by a joint and several contract. In that case, if the plaintiff bring a joint action against all the parties, he must recover against all or none. For the purposes of that action, he has elected to consider it a joint contract, and must abide the consequences." In the case of *The Bank of Gennessee vs. Field et al.*, 19 *Wend.* 643, the same principle is held, in even stronger language. The Court there say: " The undertaking of the makers in this case was several as well as joint. In general, where a plaintiff sues upon such a contract, and includes all the parties, he has made his election as to the form of remedy, and the contract, for all the purposes of the action, is thenceforward regarded as joint only, and the plaintiff must succeed against all the defendants or none." This is the well established rule in New-York, and the exceptions are only innovations produced by their local statutes, in a particular class of cases, which are fully explained in their decisions.

The case of *Tobin vs. Claflin et al.*, 3 *Sumner*, 381, has been relied on with much confidence by those who contend for the right of entering a nolle prosequi in actions *ex contractu*. This was a decision of Judge STORY, where the question was not involved, but where the Judge took pains to discuss the question upon a motion to amend the proceedings by striking out the name of one of the defendants of record. Judge Story there shows that the right of amendment is a very different right from that of entering a nolle prosequi. And although, upon principle, Judge Story might not be able to see any very satisfactory reason why a nolle prosequi might not be entered at any time before verdict, whether the defendants had united in their pleas or

Sillivant and Thorn *vs.* Reardon.

not, yet the very authorities which he cites show that no such right existed at common law. The case of *Minor et al. vs. The Mechanics' Bank of Alexandria,* 1 *Pet. Rep.* 73, has been carefully studied by this Court. In that case, the principal and his sureties had severed in their pleas on a cashier's bond. The sureties pleaded nine pleas, to which a demurrer to the two first was sustained, and judgment entered upon demurrer; and issues were taken on the other seven pleas. Minor pleaded separately five of the same pleas *mutatis mutandis.* The issues were found for the plaintiff, and judgment rendered against the former securities. At the next term of the Court, a nolle prosequi was entered as to Philip H. Minor, the cashier, and he had judgment for costs against the plaintiff, the bank. This was, indeed, an anomalous case; and STORY, J., in his opinion, acknowledges that there is no exact precedent on which the case can turn. To our minds, his opinion wants that clearness and logical analysis which usually characterize the decisions of this distinguished jurist. He two or three times points out the necessity of noticing that the suit was on a joint and several bond; that the defendants severed in their pleas from the principal; that the trial of the issues (which ought, undoubtedly, to have been, by the regular course of practice, deferred until the cause was at issue as to all the parties, or the steps of the law taken to bring them into default,) does not appear upon the record to have been opposed; and that no motion was made in arrest of judgment, or for a postponement until the trial of the issues upon the pleas of the principal might have been had. And after a full examination of the whole of the English decisions on this subject, most of which are clearly against the principle decided, or else they were actions of trespass, which had no applicability, the decision is made to rest upon this rather extraordinary conclusion: "The result of this examination into authorities is, that there is no decision exactly in point to the present case; that there is no distinction between the entry of a nolle prosequi before and after judgment, applicable to the present facts; that the authorities, and particularly the American, proceed upon the ground that the question is matter of practice, to be decided upon considerations of policy and convenience, rather than matter of absolute principle; and that, therefore, this Court is left at full liberty to entertain such a de-

cision as its own notions of general convenience and legal analogies would lead it to adopt. We are of opinion that, where the defendants sever in their pleadings, a nolle prosequi ought to be allowed. It is a practice which violates no rules of pleading, and will generally subserve the public convenience. In the administration of justice, matter of form not absolutely subjected to authority, may well yield to the substantial purposes of justice." JOHNSON, J., in his very able dissentient opinion, clearly shows, as the cases prove, that Sergeant Williams, in his *note* 2, 1 *Saund. Rep.* 207, has run into great confusion, both in stating the principle, and in citing authorities which do not sustain his position. In our opinion, no better elucidation, with few exceptions, of the principles in regard to a nolle prosequi, is to be found, than in the dissentient opinion of Judge JOHNSON.

The case of *Amis vs. Smith,* 16 *Pet. Rep.* 305, presents a state of facts differing in practice very little from the case of *Minor vs. Mechanics' Bank of Alexandria.* Smith sued Amis *et al.;* all of the defendants joined in a plea of non assumpsit; and Wright, one of them, afterwards pleaded the same plea separately. At the trial, all the defendants, except Wright, withdrew their plea, and permitted judgment to go against them by *nil dicit.* The plaintiff then discontinued the suit against Wright, whose plea remained upon the record, which was not objected to at the time. This, however, was assigned for error. McKINLY, J., says, " Whether a discontinuance of the suit can be entered against one of the several defendants in a case arising on contract, depends upon the character of the contract, and the state of the pleadings between the parties. If the contract be joint and several, and the defendants sever in their pleas, whatever may have been the doubts and conflicting opinions of former times, as to the effect of a nolle prosequi in such a case, it has never been held that a simple discontinuance of a suit amounts to a retraxit, or that it in any manner worked a bar to the repetition of the plaintiff's action. By a statute of Mississippi, all promises, contracts, and liabilities of co-partners, are to be deemed and adjudged joint and several. And in all suits founded on promises, agreements, or contracts, in writing, by two or more persons, as co-partners, signed by one or more of them, or by any person as agent in their behalf, it shall be lawful to declare against

Sillivant and Thorn *vs.* Reardon.

any one or more of them. *Howard & Hutchin's Statute Laws of Miss.* 595. This is such a severance of a contract as puts it in the power of the plaintiff to hold any portion of them jointly, and the others severally, bound for the contract. And there is no obligation on his part to put them in such condition by his pleadings, as to compel each to contribute his portion for the benefit of the others. This reduces the inquiry to this simple question: " Is the discontinuance in this case authorized by law?" The Court then review the case of *Miner vs. The Mechanics' Bank of Alexandria,* as applicable, and indeed decisive of the point. Indeed, the language used is stronger than in any case we have found. The opinion on this subject concludes: "On a joint and several bond, suit must be brought against all the obligors jointly, or against each one separately, because each is liable for the whole; but a joint suit cannot be maintained against part, omitting the rest. There is, thus far, no analogy between the right of action and the right to enter a nolle prosequi against one, as was done in that case. In this case, the plaintiff had a right to sue any number of the joint and several promissors, and to omit the others, and therefore there is a perfect analogy between the right of action and the right to discontinue the action against one, after judgment against the others."

Both these cases, decided by the Supreme Court of the United States, were settled on a different state of facts to any which have yet come before us for adjudication. When a case shall come before us where the parties have severed in their pleadings, even though one should not have pleaded a personal discharge, and where a nolle prosequi shall have been entered as to one after verdict, as to others, the subject will receive due consideration. Until then, we see no reason, under our statutes, to change the rule as settled, viz: that a party shall not discontinue, in an action on contract, after the service of process, as to a defendant so served; and that, if such discontinuance be entered, it operates as an abandonment of the action against all the other defendants. But, in the case under consideration, it was hardly necessary to have considered this point with so much care; for, according to the principle settled in the case of *Hanly vs. The Real Estate Bank,* 4 *Ark. Rep.* 598, Thorn and Sillivant waived this right by entering their demurrer, and subsequently pleading to the

Sillivant and Thorn *vs.* Reardon.

action, after the plaintiff below, according to our views, was out of Court, and this upon the universal principle governing the law of discontinuance.

We shall consider but one or two more points presented in the record, because the other errors complained of are such as have either been waived by the *remittitur* as to costs, or are not likely again to occur on the trial. Among the pleas pleaded by the defendants below, are two pleas of set-off; one, going in bar of the penalty and interest; and the other, a plea of offset as to the 75 dollars claimed in the declaration. The Court sustained a motion to strike out these pleas, as well as the plea of *nil debet.* The latter was correctly stricken out, for *nil debet* is not the general issue, or pleadable to debt on bond. But as the third plea is issuable—meets the action—is technically formal—is signed by counsel, and pleaded within proper time, we are clearly of opinion that it was improperly stricken out. A plea can only be stricken from the files under peculiar circumstances. For instance, a dilatory plea, after appearance and special imparlance, or after a party has pleaded to the action, or done some other act waiving the right; a plea that is not sworn to, where an affidavit is required by law; a plea that is not signed by counsel, &c. But a plea which merely sets up a defective defence, or a defence defectively stated, should always be met by demurrer. But it is objected that, the action being discontinued as to Ford, there was such a severance of the action as that no offset due to Ford, Thorn, and Sillivant, could be pleaded by them, but that they were left to prosecute their cross action. The argument of the defendants in error, if it proves any thing, proves too much. It assumes that Ford is no longer known to the record, and that therefore the defendants below have no right to use an offset which is jointly due to him and them. But would not this argument, if carried out, exclude the covenant from the jury, on the ground of variance? It is true that the contract is joint and several; and Reardon, in the commencement of the suit, might elect to sue one or all, or any intermediate number; but this severs not the contract, but the remedy; for Reardon might, at any time, have dismissed his suit and sued all, or he might sue all separately at the same time, although he might have but one satisfaction.

The true question, then, is not as to the mutuality of indebtedness of the parties to the action, as they remain upon the record, but of the mutuality of indebtedness as it existed between the parties at the time of the commencement of the suit. If, when Reardon commenced suit against the defendants, he really owed them six hundred dollars, as pleaded in the third plea, can he avoid the set-off by abandoning his action as to one? To admit such a rule would be to admit the worst consequences of suffering a discontinuance. Although the contract declared on is the contract of one defendant, it is the contract of all—it is joint as well as several. Ford may not be a party to the record, yet he is not a stranger to the mutual indebtedness of the parties. And although these obligees or promisees might not be allowed to sever, in bringing an action against Reardon, yet, should they jointly sue Reardon for the six hundred dollars, who shall say that Reardon might not plead an offset which they owed to him jointly? They cannot destroy his right to defence, nor can he destroy their right; and herein exists the mutuality of indebtedness. A plaintiff who holds a joint and several contract against several defendants, shall not, by suing one or more, deprive the party sued of any right which the defendants may all jointly hold, and which they might jointly plead, if all were sued. And this, we apprehend, is as far as the Court ought to have gone in the case of *Tramell vs. Harrell*, 4 *Ark. Rep.* 602. The language in that decision may seem broad. Indeed, it is difficult to lay a construction on a statute, in derogation of the common law, which, abstractedly considered, might not lead to confusion. According to that decision, we apprehend that, if Thorn, Sillivant, and Ford, had sued Reardon for 600 dollars, Reardon might have pleaded that Thorn, Sillivant, and Ford, were indebted to him 75 dollars, and have had the same offset; but he could not have pleaded that one, say Ford, owed him a note of 75 dollars, and have read a note of 75 dollars, signed by Ford alone, as an offset, because here would not have been that mutuality contemplated by the Court. We are not now disposed to depart from that decision. Should we do so, it would be to extend the rule more liberally in favor of offsets. We only now decide, that where a plaintiff sues one or more of several joint obligors or joint promisors, and his declaration shows, as it

necessarily must, that the parties so sued, together with the co-obligors or promisors not sued, have a meritorious offset against the plaintiff, that the parties so sued may plead the offset which might properly be pleaded by all of the obligors or promisors, were they parties to the record. Should we analogize this defence to other pleas to the action, our view of the subject would gain great strength. Thus, a payment by a party not sued, would be a good discharge to those sued. So would accord and satisfaction, release, and some others; and such pleas, like the plea of offset in this case, if avoided, must be avoided by replication.

The Court having decided the third plea good, it is unnecessary to discuss the question as to the right to strike out that plea. This Court, in the case of *Pope vs. Tunstall & Waring*, 2 *Ark. Rep.* 222, declined discussing the subject of striking out an insufficient plea, but considered the question as though the point had been presented by demurrer. See the rule in *Crary vs. Ashley and Beebe*, 4 *Ark. Rep.* 203.

The fourth plea is an offset of eight hundred dollars, which the defendants offered to set off against the whole penalty of the bond, and interest and damages thereon. If a party is sued on a penal bond, at common law, the plaintiff can only recover the amount of the penalty and interest in an action of debt. And the defendant, after suit, may avoid further costs by paying such penalty and interest into Court. Surely, therefore, it was competent for the defendants to offset the amount of the plaintiff's indebtedness to them, and the other party to the contract, against the whole amount which the plaintiff had a right to recover. Whether the plea was true or false, the Court could not know. That was a matter to be determined upon a proper issue.

The sixth plea was frivolous, and such as could not have been sustained on demurrer. The only question for the jury was, to inquire whether or not the defendants below had performed their covenants within the terms of the contract. If they had not, the true criterion of damages was to be ascertained by inquiring what it would cost the plaintiff to put his land in the order covenanted for. The defendants below could not excuse themselves for non-performance of the covenant, by proving an overflow in the river, much less an overflow after

the 15th of March, 1840; nor could the plaintiff below enhance his damages by proving a failure to make a crop in 1840, or the probable value of that crop. Such a rule might apply to as many years as the plaintiff might choose to delay the action. The damages were to be ascertained by a different rule, to wit: the cost of performing the work which the defendants below had covenanted to perform. All the evidence in relation to the value of the timber, or the cost of taking it off the land, or the price to be paid for clearing, other than as contained in the written contract, was equally irrelevant.

On the subject of the right of conclusion: The plaintiff in the action, having assigned his breaches, and being compelled to prove his action, as well as the breaches and damages, had the right to conclude. It is true, that the defendants below pleaded affirmative pleas; but, under our practice, although these are pleas of confession and avoidance, it did not dispense with the necessity of the plaintiff proving his breaches. He was, therefore, upon principle as well as practice, entitled to open and conclude.

Upon a full view of this complicated record, we are, therefore, of opinion that the Circuit Court erred in this, that it struck the pleas number three and four, being the pleas of offset, from the files.

Judgment reversed.