Mr. Justice Scott delivered the opinion of the court. To support the issue on the plea of ne unques executor, it was incumbent on the plaintiff below to prove his title to sue as Executor. And to do this he read in evidence a certified copy of the last will and testament of John Pope, deceased, appointing him and Daniel Ringo executors, and also read (whether as an original paper or copy does not appear) a writing which is as follows, to wit: “Washington County Court,! August Term, 1845. ) This last will and testament was produced in Court together with codicils thereto annexed; the will was proven by the oaths of Hugh McElroy, James B. Plughes and Richard J. Brown, the first codicil proven by the oath of R. J. Brown, and the second by the oaths of James B. Hughes and Hugh McElroy, and thereupon ordered to record, which is dun in Will Bk. H. Given under my hand this 25th day of August, 1845. W. B. BOOKER, Clerk.” This writing followed next after the copy of the will, and then followed a certificate “that the above and foregoing six pages contained a true copy of the last will and testament of John Pope, deceased,” over the hand of the clerk and the seal of the county court. And he then proved by Daniel Ringo, one of the executors named in the will, that he had never qualified, or in any manner acted, under this appointment, but offered no further testimony. The first question that we have to examine is, whether or not this was sufficient proof to establish the plaintiff’s representative character. And as this is a case of a foreign executor, deriving his authority from Kentucky, and suing in a court of this State under authority of our statute, this question must be determined by the laws of Kentucky, of whose local laws we have no judicial knowledge beyond this, that hers and ours were derived from a common source, incident to our common origin — the common law of England, including such of the canon law as had been infused into it by immemorial usage or recognized in our tribunals of justice at the time of our revolution. (Goodwin vs. Griffin, 3 Stewart's R. 166. Meines vs. Bank of Georgia, 2 Ala. R. (N. S.) 294. Sheperd vs. Nabers, 6 Ala. R. 631.) And in the absence of any proof to the contrary, we must presume that that body of laws without any modifications other than such as was-produced by our revolution, and by our political institutions in general, still prevail in that State. Such modifications as may have been made by her legislative acts cannot be judicially known to us, and must be shown by proof; and for this our statute of evidence has made convenient provision. (Digest 490, Sec. 2.) Then we have to look to this source for the solution oí the question we are now to examine. When this case was before this court at the January term, 1846, (1 Eng. 404,) it was held that an executor could not -declare before the probate of the will. There seem to have been but two forms of probate known to the laws of England. The one, the common form, where the executor named in the will, without notice to the parties in. interest, went forward with a witness and propounded it, there being no objection made. The other, the solemn form, where the executor gave notice to all the parties in interest, propounded it, and established by the witness. In this State we have adopted the common form subject to the solemn form at any time in five years at the instance of any party in interest. In England, previously to the granting of probate of a will, it was required of the executor to swear “that the writing contains the true last will and testament of the deceased so far as the deponent knows or believes, and that he will truly perform the same,” &c. (Toller on Executors 58.) And “if the executor be infirm, or live at a distance, it was usual to grant a commission or requisition to the Archbishop or Bishop of England or Ireland, (as the case might be,) or if in Scotland, the West Indies, or other foreign parts, to a magistrate or other competent authority to administer the oath to be taken previous to the granting probate of the will.” (Toller on Executors 65, sec. 8.) And in Williams on Executors 201, when remarking on the manner of obtaining probate, it is said: “The person alone by whom a testament can be proven, is the executor named in the will, whom the ordinary or other person having authority for the probate of testaments, may cite, to the intent to prove the testament and take on himself the execution thereof or else refuse the same.” And in 1 Salkeld 300 it is said that the reason why an executor of an executor, who has died before obtaining probate of the will, cannot be the executor of the first testator, as he would be in case the first executor had obtained the probate, is that no one except the executor named in a will can obtain its probate. And in 3 Salkeld (Evidence 153) it is said “ upon an issue joined, whether executor or not, the plaintiff, to prove himself executor, produces the probate of the will. The defendant may plead that the seal was forged, or that there was a repeal, or. that the testator had bona notabilia, but he cannot give in evidence that this was not his will, or that another is executor, or that the testator was non compos, because the ordinary is judge of these things, and his acts are conclusive, and the party is estopped to falsify them, as he would do if this should be admitted to be evidence.” And, in 1 Phillips Ev. 344, it is said: “ A- probate is the only legitimate evidence of personal propérty being vested in an executor, or of the appointment of tbe executor and, in 2 Greenleaf Ev., sec. 339, it is said: “ The probate itself is the only legitimate ground of the executor’s right to sue for the personalty, and it is conclusive evidence of his appointment and of the contents of the willand, in Toller on Ex. 75, Sec. 10, it is said : “ The probate thus passed, although it does not confer, yet authenticates the right of the executor, for courts of law and equity take no judicial notice of any executor until he has proved the will.” In the case of Cox vs. Allingham, Eng. Cond. Ch. Rep. 242, Jacobs 514, where the question was whether the Book of Acts from Doctors’ Common could be read in evidence to prove the probate of the will without first accounting for the non-production of the certificate of probate, the Master of the Rolls says: “ In the cases cited from Levinz it is said that title was made to a term as administrator, but no letters of administration were produced. It does not say they were lost; and the book of the ecclesiastical court was received. That case is in point. The book produced was like this; the one in which the grant was entered. It cannot possibly make any difference whether it is the case of an executor or administrator, for all that is wanted in either casé is to show that the ecclesiastical court gave authority to the person in question to administer.” And the form in which the entry of the grant of probate or administration was made will appear from the following extract from the registry of the prerogative court of Canterbery made when administration was granted on the estate of Sir Edward Williams in October, 1804: “Administration of the' goods and chattels and credits of Sir Edward Williams, Bart., late of Lang-ford Castle in the county of Brecon and of Clifton in the county of Gloucester, deceased, was granted to Dame Elizabeth Williams widow, the relict of the said deceased, having been first sworn by commissioners duly to administer.” And the substance of the certificate of probate of a will and testament will appear from the following remarks of the Master of Rolls in the case of Cox vs. Allingham, before cited, that is to say, “The thing, which is required to be proven, is to whom the ecclesiastical court has granted the power of administering the property. The ordinary evidence is the probate which is a copy of the will with a certificate under seal of the court that probate has been granted to the executor.” We have thus thrown together all these authorities without remark, they being perhaps their own best expositors. And in their light it seems manifest that the probate of a will and testament in the ecclesiastical courts was far more than the mere proof of its execution by the testator. For it was not only a judicial ascertainment of the authenticity of the will, but it was at the same time both an authentication of the right of 'the executor to administer and also a grant to him of further authority in the administration of the estate, while at the same time it created the only evidence that either a court of law or equity would recognize to prove his representative character, when that had to be shown or was called in question in either of these coutts. And the mode of proof was either by a certified copy of the will accompanied with a certificate under the seal of the court that probate thereof had been granted to him, which’ was the usual mode, or else the Book of Acts itself was produced, from which the entry of the grant of probate to-him was read as evidence. In either form however the thing to be proven was the act of the ecclesiastical court by and through which the probate of the will had been granted to him. In this country where an oath of office and the giving of bonds are made essential by statute to his right to act, those also must be proven. 2 Greenl. Ev. 339. In England the oath of office was administered as the first step in procuring probate or administrar tion and was therefore included in it. Now in the case before us, if the evidence offered was really any evidence at all, it fell far short of proving that the probate of the will in question had ever been granted to any one. If it proved any thing it was only that the authenticity of the will had been proven sufficiently to the satisfaction of the court in Kentucky to produce an act of that court ordering it to record, but it proved no act granting its probate to any one. There was clearly then no evidence before the court below of the representative character of the plaintiff in which he sued. The testimony of Daniel Ringo was improperly admitted. It was clearly incompetent as all the authorities show. In 1 Williams' Ex. 166, that author says “with regard to the mode of refusal by the executor it is laid down that the refusal cannot be verbal, but it must be by some act entered or recorded in the spiritual courts, and therefore must be done before some judge spiritual, and not before the neighbors in the country:” and to the same effect is Toller on Ex’rs. 40. This, however, is not the uniform rule in all the States of this Union. In Virginia it may be evidenced by acts in pais, or presumed from circumstances, and need not, as in England, be matter of record. 3 Mun. 345. 4 Mun. 322. The most usual mode however in that State is either by refusal in court or by writing which is proven in court and recorded. 1 Tucker's Lec. 394. As to striking out the 3d and 4th pleas of the defendant, there was no error: they both present matter in abatement, and were out of time. Sillivant & Thorn vs. Reardon, 5 Ark. 140, and other cases in this court since decided. But as there was no sufficient evidence before the court below sitting as a jury to establish the representative character of the plaintiff below, and as incompetent testimony was admitted on the part of the plaintiff below, over the objection of the defendant below, a new trial ought to have been granted on the motion of the defendant below; and as the overruling of this motion was therefore error, the judgment of the court below must be reversed and the cause remanded. Ringo & Trapnall, for deft., filed a petition for reconsideration, which, by Johnson, C. J. & Walker, J., was overruled.